UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

JARRETT CUDD, on behalf of himself and
all others similarly situated,

    *Plaintiff,*

v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

    *Defendant.*

Civil Action No. 4:21-cv-00217-CDL

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY'S MOTION
TO DISMISS OR, IN THE ALTERNATIVE, COMPEL APPRAISAL AND STAY**

    This case is a proposed class action challenging the amounts paid by State Farm Mutual Automobile Insurance Company ("State Farm") for actual cash value on Georgia total loss claims. When requested by either party, the relevant insurance Policy requires an appraisal whenever the insured and State Farm disagree on the actual cash value of the covered vehicle. State Farm requested appraisal, and Plaintiff refused to comply with the mandatory appraisal provisions in his Policy. As a result, the Court should grant this motion to dismiss.

    First, this is nothing more than a simple case of an insured being disappointed with the amount paid on his total loss claim. Plaintiff lacks standing to bring claims against State Farm because when there is a disagreement, the amount of loss needs to be determined by appraisal. The result of the appraisal is unknown at this point in the dispute—it could be an amount equal to or even less than what State Farm already paid to Plaintiff. At least two federal courts presiding over nearly identical lawsuits involving substantially similar policy language recently applied

1

federal standing principles and determined that the plaintiffs lacked standing to assert claims against State Farm until completion of the appraisal process.

Second, Plaintiff's refusal to comply with appraisal is an independent basis upon which the Court should dismiss Plaintiff's breach of contract claim. Plaintiff is expressly precluded from bringing suit until "there has been full compliance with all the provisions" in the Policy, including appraisal.

Third, even if the appraisal provision does not apply, the Complaint is nothing more than a set of conclusory allegations, failing to meet pleading standards. On the contract claim, Plaintiff fails to identify even the most basic elements of a breach of contract claim such as the Policy provision that State Farm allegedly breached. Plaintiff's good faith and fair dealing claim fails for the same reason because it is not a free-standing cause of action under Georgia law, and Plaintiff cannot read obligations into the Policy that do not exist. Plaintiff's declaratory judgment claim similarly fails because it merely duplicates the breach of contract claim and serves no useful purpose on its own.

Alternatively, if the Court declines to dismiss the Complaint, then the Court should compel appraisal and stay this action pending completion of that process. Other federal courts have reasoned that a stay is appropriate where, as here, the insurer invokes an appraisal provision after the insured expresses disagreement as to the value of a total loss vehicle.

## BACKGROUND

**A.     The Relevant Policy Provisions.**

Plaintiff Jarrett Cudd insured his vehicle with State Farm under Policy Form 9811B. Complaint [ECF 1] ("Compl.") ¶ 10; *see* certified copy of Plaintiff's Policy, attached as Exhibit


A.[1]   Under the Limits and Loss Settlement – Comprehensive Coverage and Collision Coverage Section of the Policy, State Farm has the right to settle a loss claim by paying "the cost to repair the *covered vehicle* minus any applicable deductible" or paying "the actual cash value of the *covered vehicle* minus any applicable deductible." Ex. A at Policy Booklet, p. 22-23.  When State Farm declares a covered vehicle a total loss and actual cash value is used for loss settlement, the Policy states as follows:

> The owner of the *covered vehicle* and *we* must agree upon the actual cash value of the *covered vehicle*. If there is disagreement as to the actual cash value of the *covered vehicle*, then the disagreement will be resolved by appraisal upon written request of the owner or *us* [.]

*Id*. at 23 (emphasis in original).

Once either State Farm or the insured invokes appraisal, the parties must adhere to the appraisal procedures outlined in the Policy.  *Id*.  The appraiser's role is limited to determining the actual cash value and "shall have no authority to decide any other questions of fact [or]decide any questions of law."  *Id.*  The Policy also provides that "[l]egal action may not be brought against [State Farm] until there has been full compliance with all the provisions" of the Policy.  *Id*. at 37.

**B.    The Total Loss Settlement.**

On May 8, 2021, Plaintiff's 2014 Nissan Sentra was damaged and declared a total loss. Compl. ¶ 24.  State Farm valued Plaintiff's vehicle at $8,531 and paid him that amount.  *Id*. ¶ 27. To determine the actual cash value of Plaintiff's vehicles for loss settlement, State Farm selected Audatex North America ("Audatex"), a leading independent vehicle valuation company, to prepare comprehensive vehicle valuation reports.  Compl. ¶ 15, *id.* at Ex. A.  Audatex has determined

---

[1] The Court may consider the Policy on a Motion to Dismiss, even though Plaintiff did not attach to the Complaint. *See Maxcess, Inc. v. Lucent Techs., Inc.*, 433 F.3d 1337, 1340 (11th Cir. 2005).

market values for vehicles since 1985, and in that time span, has valued more than 30 million vehicles. *Id*. at Ex A at p. 1.  Audatex prepared valuation reports for Plaintiff's vehicle using local and national websites, vehicle guides, publications, and partnerships representing more than 10,000 independent vehicle sources. *Id*.  The Audatex valuation reports are transparent and include information on values for four comparable vehicles offered for sale at dealerships in Plaintiff's local market, as well as adjustments based on the features and condition of the vehicles and a Typical Negotiation Adjustment ("Negotiation Adjustment"). *Id*. at Ex. A.  For each comparable vehicle, the valuation report contains a detailed description of the vehicle, the location of the dealership, the advertised price of the vehicle, features that Autosource determined to be relevant to adjusting the price, and other relevant adjustments, including the Negotiation Adjustment. *Id*.

**C.     Plaintiff's Complaint.**

On December 23, 2021, Plaintiff filed his Complaint.  ECF 1.  Plaintiff seeks to represent a class of Georgia insureds who were insured by a contract of automobile insurance issued by State Farm, and who received a first-party total loss valuation and payment that included a Negotiation Adjustment.  Compl. ¶ 28.

Plaintiff asserts three causes of action: (1) breach of contract; (2) breach of covenant of good faith and fair dealing; and (3) declaratory judgment.  Plaintiff's claims are all premised on the theory that by using Negotiation Adjustments in the Audatex valuation reports, State Farm undervalued comparable vehicles when paying total loss claims.  Compl. ¶¶ 5-6, 17, 38, 45. Plaintiff contends that State Farm should have simply used the internet list prices of comparable vehicles to determine actual cash value. *Id*. ¶¶ 5, 18, 23.  Plaintiff alleges that State Farm undervalued and underpaid his claim by 8-9%. *Id*. ¶¶ 18, 23-26.

Although Plaintiff alleges that State Farm paid "less than the actual cash value of his total loss vehicle," Plaintiff does not allege any specific Policy provisions, or contract language that State Farm purportedly breached.  Compl. ¶¶ 27, 38.  Plaintiff further asserts conclusory allegations that Negotiation Adjustments are "arbitrary," "contrary to industry practices," "atypical," and "not specific or appropriate as to dollar amount," but does not allege the specific appraisal standards, methodologies, or industry practices that discourage application of a typical Negotiation Adjustment.  *Id*. ¶¶ 1, 4, 5, 19, 20, 38.  And although Plaintiff alleges that State Farm paid him "less than the actual cash value of his total loss vehicle," Plaintiff does not allege that he followed the appraisal process in the Policy.  *Id*. ¶ 27.

On January 27, 2022, upon learning for the first time through this Complaint that Plaintiff challenged the calculation of actual cash value on his claim, State Farm requested an appraisal in writing pursuant to the terms of the Policy.  *See* Exhibit B, Declaration of Daniel F. Diffley ¶ 2, *id.* at Ex. 1 (Appraisal Letter to Plaintiff from State Farm).  On February 15, 2022, Plaintiff responded to State Farm's Appraisal Letter refusing to participate in the appraisal process.  *Id*. ¶ 3, *id*. at Ex. 2 (Plaintiff's Response to State Farm's Appraisal Letter).

## **LEGAL STANDARD**

The first issue in this Motion is whether Plaintiff has standing to bring these claims without having complied with the appraisal provision.  When standing is an issue, a complaint must be dismissed under Fed. R. Civ. P. 12(b)(1) "if considering the factual allegations in the light most favorable to the plaintiff, the action . . . is not a case or controversy within the meaning of the Constitution."  *Baker v. Carr*, 369 U.S. 186, 198 (1962).  When a defendant moves to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), the plaintiff bears the burden of

proving that the court has jurisdiction to decide the claim. *Sweet Pea Marine, Ltd. v. APJ Marine, Inc.*, 411 F.3d 1242, 1247 (11th Cir. 2005).

State Farm also seeks to dismiss for failure to state a claim. Dismissal of a complaint is proper where it is based on allegations which fail "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) should be granted where the plaintiff fails "to raise [his] right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*.

## ARGUMENT

### A. The Court Should Dismiss Plaintiff's Complaint Because Plaintiff Lacks Standing to Bring Suit Without Complying with the Appraisal Provision.

Plaintiff lacks standing because he has failed to comply with the Policy's appraisal provision and therefore fails to allege a cognizable injury-in-fact. Standing is "the threshold question in every federal case, determining the power of the court to entertain the suit." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). To satisfy Article III, an injury must be "concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (quoting *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010)).

This dispute is, at its core, about the value of Plaintiff's vehicle. Plaintiff repeatedly alleges that State Farm "system[atically] fail[s] to pay the actual cash value of total loss vehicles as required under the contract," pays "less than actual cash value," and "undervalue[s] comparable and total loss vehicles when paying [] total loss claims." Compl. ¶¶ 6, 17, 27, 40. Plaintiff's own allegations make clear that this lawsuit concerns the value State Farm assigned to his vehicle. Numerous other courts have reached the same conclusion. *See, e.g., Moore v. Travelers,* 321 F.

6

App'x 911, 913 (11th Cir. 2009); *Anoushfar v. Lexington Ins. Co.,* No. 21-11244, 2021 U.S. App. LEXIS 31164, at *12 (11th Cir. Oct. 18, 2021); *Zurich Am. Ins. Co. v. Omni Health Sols., LLC,* 774 S.E.2d 782, 783 (Ga. Ct. App. 2015); *Phillips v. Garrison Prop. & Cas.,* No. 2:19-cv-01727-JEO, 2020 U.S. Dist. LEXIS 104094, at *52-54 (N.D. Ala. May 12, 2020); *Bettor v. Esurance Prop. & Cas. Ins. Co.*, No. 18-61860, 2019 WL 2245564, at *3 (S.D. Fla. Mar. 28, 2019), *adopted by* 2019 WL 3408900 (S.D. Fla. June 17, 2019).

Under the express terms of the Policy, valuation disputes—like this one—must be resolved through appraisal after a party invokes that mechanism. Ex. A at Policy Booklet, p. 23 ("If there is disagreement as to the actual cash value of the ***covered vehicle*,** then the disagreement will be resolved by mediation or appraisal upon written request of the owner or ***us***."). There is no question that appraisal provisions are enforceable in insurance contracts.[2] Because State Farm invoked appraisal, Plaintiff is required to participate in that process before proceeding with this lawsuit. *Id.*; Ex. B at Exs. 1-2.

Two federal courts recently analyzing nearly identical allegations against State Farm have found that plaintiffs lack standing where they bring total loss valuation claims before a contractually mandated appraisal remedy has been completed. *See Bryant v. State Farm Mut. Auto. Ins. Co.*, No. 20-cv-04669, 2021 WL 711495, at *7 (N.D. Cal. Jan. 13, 2021); *Clippinger v. State Farm Mut. Auto. Ins. Co.*, No. 20-cv-02482, 2021 WL 4887984, at *1 (W.D. Tenn. Oct. 19, 2021). In *Bryant*, for example, the plaintiff brought similar claims alleging that State Farm improperly valued the actual cash value of her vehicle under nearly identical policy terms. *Bryant*,

---

[2] *See, e.g., Eagles Landing Daycare & Learning Ctr. v. Sparta Ins. Co.*, 2015 WL 13427602, at *1 (N.D. Ga. Apr. 6, 2015) (enforcing appraisal reward); *Eberhardt v. Ga. Farm Bureau Mut. Ins. Co.*, 223 Ga. App. 478, 479 (1996) (affirming motion for summary judgment in favor of defendant insurer as to the enforceability of appraisal clause in homeowner's policy); *Bell v. Liberty Mut. Fire Ins. Co.*, 319 Ga. App. 302, 303 (2012).

2021 WL 711495, at *1-2. Just as it did here, State Farm "requested an appraisal in writing" after the case was filed. *Id.* at *2. The court held that "unless and until the appraisal process is completed, it is not clear whether or not [plaintiff] has been injured or incurred any damages," and granted State Farm's motion to dismiss under Rule 12(b)(1) based on standing. *Id*. at *7 ("[O]nce State Farm requested an appraisal in writing and Plaintiff refused to participate, Plaintiff cannot demonstrate an element essential to [his] claims—any injury or damages.").

Likewise, in *Clippinger*, the plaintiff alleged that State Farm breached substantially similar policy language by applying a Negotiation Adjustment and improperly calculating the actual cash value of its insureds' total loss vehicles. *Clippinger*, 2021 WL 4887984, at *1. After State Farm invoked the policy's appraisal provision, the court ruled that the plaintiff did not have standing to pursue his breach of contract claims. *Id*. at *14. The court explained that "until appraisal is complete, the parties still can only speculate about whether (1) Defendant failed to pay Plaintiff the actual cash value of her vehicle, (2) Defendant breached the contract, or (3) Defendant's breach injured Plaintiff." *Id*.

Here, as in *Bryant* and *Clippinger*, Plaintiff "must show that Defendant failed to pay him the loss vehicle's actual cash value" in order to establish an injury. *Clippinger*, 2021 WL 4887984, at *14. But "it is impossible to know whether State Farm undervalued Plaintiff's vehicle" until appraisal is completed. *Bryant*, 2021 WL 711495 at *7. The amount of loss determined by appraisal could be equal to or less than what State Farm already paid Plaintiff. And under the terms of the Policy, State Farm will owe, and then pay, Plaintiff additional sums if appraisal produces a higher estimated actual cash value than State Farm's settlement payment. *See* Ex. A at Policy Booklet, p. 23.

Accordingly, this suit is premature, and Plaintiff lacks standing to pursue his claims under Article III. *See Tsao v. Captiva MVP Rest. Partners, LLC*, 986 F.3d 1332, 1338 (11th Cir. 2021) (affirming dismissal because plaintiff lacked standing and observing that "'[w]here a hypothetical future harm is not certainly impending, plaintiffs cannot manufacture standing merely by inflicting harm on themselves'"); *Malowney v. Fed. Collection Deposit Grp.*, 193 F.3d 1342, 1347 (11th Cir. 1999) ("There must be a substantial likelihood that the plaintiff will suffer future injury: a 'perhaps' or 'maybe' chance is not enough.").

### B.     The Complaint Fails to State a Claim for Breach of Contract.

Even if Plaintiff had Article III standing to sue State Farm (he does not), the Court should still dismiss the Complaint for failure to state a claim under Rule 12(b)(6). Plaintiff's contract claim is defective because he: (1) cannot demonstrate compliance with a condition precedent and (2) comes nowhere close to satisfying the pleading standards mandated by *Twombly* and *Iqbal*.

#### 1.     Plaintiff Fails to Plead Compliance with the Mandatory Appraisal Process.

This Court applies Georgia law to insurance policies delivered in Georgia insuring property located in Georgia. *Accident Ins. Co. v. Donald Bowles, Inc.*, No. 4:15-CV-36-CDL, 2016 U.S. Dist. LEXIS 26305, at *6 (M.D. Ga. Mar. 1, 2016). Unambiguous terms in an insurance contract "require no construction, and their plain meaning will be given full effect, regardless of whether they might be of benefit to the insurer or be of detriment to an insured." *Auto-Owners Ins. Co. v. Cook Cnty. Land Ventures, LLC,* No. 7:19-CV-87 (HL), 2021 U.S. Dist. LEXIS 160424, at *11 (M.D. Ga. Aug. 25, 2021) (citing *Auto-Owners Ins. Co. v. Neisler,* 334 Ga. App. 284, 286, 779 S.E.2d 55, 58-59 (2015)).

Plaintiff must also allege compliance with all conditions precedent to the contract. *Suntrust Mortg., Inc. v. Ga. Farm Bureau Mut. Ins. Co.*, 416 S.E.2d 322, 323 (Ga. Ct. App.1992);

9

*Marchman v. Grange Mut. Ins. Co.*, 500 S.E.2d 659, 660 (Ga. Ct. App. 1998). Where, as here, "[t]here is no question that the dispute [] is a fight about the dollar amount of the loss[,]" the plaintiff "must first comply with the appraisal provision to determine his amount of loss." *Moore,* 321 F. App'x at 913. In *Moore*, the Eleventh Circuit affirmed the dismissal of an action brought by an insured under a homeowner's policy because the dispute was "about the dollar amount of the loss", concerned the "calculation of actual cash value", and plaintiff was "contractually bound" to "comply with the appraisal provision to determine [the] amount of loss." *Id.*; *see also* Fed. R. Civ. P. 9(c) (requiring a plaintiff to allege that "all conditions precedent have occurred or [have] been performed" prior to initiating a cause of action).

As in *Moore*, State Farm invoked its right to appraisal and the Policy prohibits Plaintiff from pursuing legal action "until there has been full compliance" with the terms of the contract. Ex. A at Policy Booklet, p. 37. Plaintiff's complaint therefore "fails to state a claim upon which relief can be granted" because appraisal has not "yet taken place to resolve this matter." *Moore*, 321 F. App'x at 913; *Brothers v. Generali U.S. Branch*, No. 1:97-cv-798-MHS, 1997 U.S. Dist. LEXIS 14158, at *8 (N.D. Ga. July 11, 1997); *see also Se. Nursing Home, Inc. v. St. Paul Fire & Marine Ins. Co*., 750 F.2d 1531, 1538 (11th Cir. 1985); *Cortes v. Am. Sec. Ins. Co.,* No. 20-CV-24247-PCH, 2021 U.S. Dist. LEXIS 7535, at *1-3 (S.D. Fla. Jan. 12, 2021).

### 2. Plaintiff Fails to Plausibly Allege that the Policy Was Breached.

Plaintiff's breach of contract claim fails for the additional reason that the Complaint does not set forth sufficient facts on how State Farm breached the Policy. While the Complaint formulaically recites that State Farm "breached its contract with Plaintiff [] by not paying total loss claims upon the actual cash value of loss vehicles" (Compl. ¶ 38), it does not identify, quote from, or paraphrase any specific provisions in the Policy that State Farm allegedly breached. That failure

alone warrants dismissal. *Bryant v. Progressive Mountain Ins. Co.*, 243 F. Supp. 3d 1333, 1340 (M.D. Ga. 2017) ("A plaintiff asserting a breach of contract claim must allege a particular contractual provision that the defendants violated to survive a motion to dismiss."); *see also Allstate Ins. Co. v. ADT, LLC*, No. 1:15-CV-517-WSD, 2015 WL 5737371, at *7 (N.D. Ga. Sept. 30, 2015); *Am. Casual Dining, L.P. v. Moe's Sw. Grill, L.L.C.*, 426 F. Supp. 2d 1356, 1369 (N.D. Ga. 2006).

Further, Plaintiff does not allege any facts to suggest that State Farm failed to settle Plaintiff's total loss claim as required under the Policy. The Policy simply provides that State Farm will "pay the actual cash value of the ***covered vehicle*** minus any applicable de-ductible." Ex. A at 23. The Policy does not define actual cash value and does not expressly obligate State Farm to use any particular source or method to calculate actual cash value. While Plaintiff alleges that State Farm's use of Negotiation Adjustments is "unjustified," "[in]appropriate," and "contrary to industry practices and consumer experiences," Plaintiff has not stated any facts to explain how State Farm's valuation runs afoul of its obligation to pay actual cash value.[3] Compl. ¶ 38.

Consistent with Georgia law and Eleventh Circuit precedent, Plaintiff recognizes that "State Farm must consider a vehicle's fair market value when settling a total loss claim for actual cash value." Compl. ¶ 5; *Covington Lodging, Inc. v. W. World Ins. Grp. Inc.*, Case No. 19-54789, 2021 WL 4256371, at *22 (N.D. Ga. Bankr. 2021) ("In Georgia, the basic measure of loss is ACV, which is equivalent to the fair market value of the property at the time of loss."); *Johnson v. GMAC*, 165 B.R. 524, 529-30 (S.D. Ga. 1994); *see also Marquez v. Nat'l Fire & Marine Ins. Co.,* No. 20-

---

[3] The Policy does not contain a valuation methodology for actual cash value because it includes an appraisal provision that offers both parties the ability to review the total loss figure. Ex. A at 23 ("The owner of the ***covered vehicle*** and ***we*** must agree upon the actual cash value of ***the covered vehicle***. If there is a disagreement as to the actual cash value of the ***covered vehicle***, then the disagreement will be resolved by appraisal upon written request of the owner or ***us***. . . .").

cv-22791, 2021 U.S. Dist. LEXIS 143579, at *18 (S.D. Fla. Aug. 2, 2021). Fair market value has been defined as "the price that a seller is willing to accept and a buyer is willing to pay on the open market and in an arm's-length transaction." *Paris v. Progressive Am. Ins. Co.,* No. 19-21761, 2021 U.S. Dist. LEXIS 165314, at *15 n.6 (S.D. Fla. Aug. 27, 2021) (internal citations omitted) (citing BLACK'S LAW DICTIONARY (11th ed. 2019)).  The fair market value of a particular item of property "is not to be determined by a forced sale price." *Gutherie v. Ford Equip. Leasing Co.*, 424 S.E.2d 889, 891 (Ga. Ct. App. 1992).  Nor is the fair market value "to be determined by the sale price of the item in a market other than that in which such item is most commonly sold to the public." *Id.*; s*ee also Cartersville Dev., LLC v. Ga. Bank & Trust*, 664 S.E.2d 783, 785 (Ga. Ct. App. 2008) ("True market value 'is the price that the property will bring when it is offered for sale by one who is not obligated, but has the desire to sell it, and is bought by one who wishes to buy it, but is not under a necessity to do so.'").

Determining the actual cash value of a total loss vehicle therefore requires consideration of the market in which vehicles are most commonly sold to the public and "the realities of the haggling that ensues in the American market when one buys a vehicle." *Robinson v. Tex. Auto. Dealers Ass'n*, 387 F.3d 416, 423 (5th Cir. 2004).  Automobile prices are virtually always negotiated, with the advertised price serving as the dealer's opening offer. *Garcia v. Medved Chevrolet, Inc.*, 240 P.3d 371, 380 (Colo. App. 2009) ("individual prices [are] negotiated by car buyers, some of which may pay hundreds less than other buyers for an identically equipped automobile").[4] In fact,

---

[4] *See also Town Sound & Custom Tops, Inc. v. Chrysler Motors Corp.*, 959 F.2d 468, 489 (3d Cir. 1992) (noting that "prices are individually negotiated" in the retail automobile market); *Rigakos v. Oneill*, No. FSTCV166027436S, 2017 Conn. Super. LEXIS 4478, at *13-14 (Conn. Super. Ct. Sept. 11, 2017) ("Automobile sales, and especially used vehicles, routinely if not nearly universally are perceived to be based on negotiated prices, with an asking price as a starting point.").

the Georgia Department of Law Consumer Protection Division tells prospective vehicle purchasers to "comparison-shop[]","*[n]egotiate [] the purchase price*," and explains that "sale price[s] [] are negotiated." Exhibit C (emphasis added).[5] Moreover, Audatex is a generally recognized motor vehicle industry source that "use[s] a consistent methodology across all vehicles that includes recent sales of comparable vehicles." *FTC v. CCC Holdings, Inc.*, 605 F. Supp. 2d 26, 40 (D.D.C. 2009). Because Audatex's methodology is both consistent and reliable, many states have approved of Audatex's valuation reports as an appropriate resource for determining actual cash value.

State Farm paid the actual cash value of Plaintiff's vehicle following a detailed, robust valuation process that retrieved Plaintiff's individual vehicle specifications, reviewed comparable vehicle information in Plaintiff's geographic area, and applied industry standard adjustments (including a Negotiation Adjustment) affecting the selling price and marketability of the vehicles in the open market. Compl. at Ex. A. Plaintiff does not (and cannot) identify a single provision in the Policy that requires anything more or less of State Farm.

### 3. Plaintiff Relies on Non-Existent Statutory Language to Allege Breach.

Because the Policy does not obligate State Farm to determine actual cash value based on specific appraisal standards, methodologies, or inventory management practices, Plaintiff cites Rule 120-2-52.06 of Georgia's Total Loss Regulation to allege breach. *See* Compl. ¶ 39 (citing GA. COMP. R. & REGS. R. 120-2-52.06). Plaintiff purports to quote language from that regulation requiring any deductions for total loss claims that deviate from providing actual cost values to be

---

[5] State Farm requests that the Court take judicial notice of this information. Courts may consider on a motion to dismiss materials that are appropriate for the taking of judicial notice under Federal Rule of Evidence 201, including information contained on state and federal government websites. *Matthews v. JPMorgan Chase Bank, N.A.,* No. 1:12-CV-03757-RWS-WEJ, 2013 U.S. Dist. LEXIS 196947, at *7 n.3 (N.D. Ga. Jan. 14, 2013) ("A court may also take judicial notice (see Fed. R. Evid. 201) of information on a government agency website without having to convert a motion to dismiss into one for summary judgment.").

"as specific and reasonably possible, and specific and appropriate as to dollar amount." *Id*. at ¶¶ 38, 39 (citing GA. COMP. R. & REGS. R. 120-2-52.06). But that language does not appear in Rule 120-2-52.06, or any other Georgia Regulation addressing total loss claims. *Id*. at ¶ 39. Instead, the language Plaintiff quotes in the Complaint is from a Tennessee insurance regulation, and thus, not applicable here. *Id*.; *see* TENN. COMP. R. & REGS. 0780-01-05-.09.

To the extent Plaintiff seeks to rely on other provisions of Rule 120-2-52.06, that is improper and should be rejected. *See Mazaiwana v. Allstate Ins. Co.*, No. 1:14-CV-756-ODE, 2015 WL 11243470, at *3 (N.D. Ga. Jan. 26, 2015) (Georgia's Unfair Claims Settlement Practices Act "vests enforcement in the Commissioner and does not provide a private cause of action."); *Cross v. Tokio Marine & Fire Ins. Co. Ltd.*, 563 S.E.2d 437, 439 (Ga. Ct. App. 2002) ("By the plain language of the Act, [] there is no private cause of action in Georgia under the Unfair Claims Settlement Practices Act.").[6]

## C. Plaintiff's Breach of the Covenant of Good Faith and Fair Dealing Should be Dismissed Because it is Not a Free-Standing Cause of Action in Georgia.

The Court should also dismiss Count II because the covenant of good faith and fair dealing is not an independent cause of action under Georgia law. *See Stuart Enters. Int'l, Inc. v. Peykan, Inc.*, 555 S.E.2d 881, 884 (Ga. Ct. App. 2001) ("The implied covenant of good faith modifies, and becomes part of, the provisions of the contract itself. As such, the covenant is not independent of the contract."). Plaintiff seeks to override the express terms of the Policy, which simply requires State Farm to "pay the actual cash value of the ***covered vehicle*** minus any applicable de-ductible."

---

[6] Plaintiff has not (and cannot) allege any violations of Rule 120-2-52.06. The regulation lists a number of available valuation methods, including using the "cost of two or more comparable automobiles in the local market area," GA. COMP. R. & REGS. R. 120-2-52.06(a)(1). State Farm's use of Audatex, which identified four comparable automobiles in Plaintiff's local market area, irrefutably satisfies this criterion. Compl. at Ex. A, at p. 1-2.

Ex. A at 23; *Burger King Corp. v. Agad*, 941 F. Supp. 1217, 1221 (N.D. Ga. 1996). As explained, State Farm settled Plaintiff's total loss claim in the manner required under the Policy. *Layer v. Clipper Petroleum, Inc.*, 735 S.E.2d 65, 73 (Ga. Ct. App. 2012) (dismissing claim for breach of covenant of good faith and fair dealing because the plaintiff could not prevail on his underlying breach of contract claim).

### D. Plaintiff's Declaratory Judgment Claim Should be Dismissed Because it is Duplicative of the Contract Claim.

The Court should exercise its "unique and substantial discretion" to dismiss Plaintiff's declaratory judgment claim because it serves no useful purpose, seeking the same relief as the contract claim. *See Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995). "[W]here a litigant's request for declaratory judgment is 'duplicative' of his independent claims, that request is 'improper for resolution by declaratory judgment.'" *Zone 4, Inc. v. Brown*, No. 1:19-CV-0676-LMM, 2019 U.S. Dist. LEXIS 226524, at *10-11 (N.D. Ga. June 12, 2019). Plaintiff's declaratory judgment claim is nothing more than a re-framed breach of contract claim. Plaintiff re-pleads all preceding paragraphs of the Complaint, seeks a "declaration of rights and liabilities," and requests that the Court determine State Farm breached the Policy by basing the valuation and payment of claims on vehicles reduced by the Negotiation Adjustment. Compl. at ¶ 49. Because Plaintiff "merely seeks for the Court to declare that [State Farm] breached [its] contract[]," the declaratory judgment claim "must be dismissed as duplicative." *Aria Dental Grp. LLC v. Farmers Ins. Exch. Foremost Ins. Co. Grand Rapids*, 528 F. Supp. 3d 1359, 1364 (M.D. Ga. 2021).

Plaintiff's declaratory relief claim should also be dismissed because Plaintiff has an adequate remedy at law in the form of money damages on his breach of contract claim. *King v. Liberty Mut. Ins. Co.*, No. 1:18-CV-2296-TWT, 2018 WL 9815604, at *2 (N.D. Ga. Dec. 4, 2018).

15

### E.     Alternatively, the Court Should Compel Appraisal and Stay this Action Pending Compliance with the Appraisal Conditions.

In the alternative, if this Court decides not to dismiss the Complaint, it should stay this action pending resolution of the appraisal process. "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co*., 299 U.S. 248, 254 (1936). Courts have "broad discretion" as to the question of whether a stay should be granted. *Clinton v. Jones*, 520 U.S. 681, 706 (1997).

Where insureds and insurers have contracted to pursue appraisal to resolve disagreements that are, at their core, about the value of a covered vehicle or property, Georgia courts and other District Courts within this circuit have compelled appraisal and stayed litigation. *See Eagles Landing Daycare & Learning Ctr. v. Sparta Ins. Co*., Case No. 1:14-cv-465, 2014 WL 11930590, at *2 (N.D. Ga. July 21, 2014) (staying litigation and compelling appraisal because such process "may actually save the parties the time and money of prolonged litigation"); *Phillips*, 2020 U.S. Dist. LEXIS 104094, at *52-54 (granting insurer's motion to compel appraisal and staying case pending appraisal); *see also Ozburn v. Nat'l Union Fire Ins. Co.,* 163 S.E. 321, 323 (Ga. Ct. App. 1932) (granting stay pending appraisal); *c.f. Bullard v. Elec. Ins. Co.,* No. 19-24225-CIV, 2019 U.S. Dist. LEXIS 190090, at *2-3 (S.D. Fla. Oct. 31, 2019) (dismissing complaint, compelling appraisal, and observing that "[a]lthough the Court may exercise its discretion to stay this matter pending appraisal, the Court does not believe that a stay would further the interests of judicial economy [in part] given the … relative simplicity of this claim.").

If the Court does not dismiss all claims against State Farm, it should reach the same legal conclusion here as in *Phillips* and *Clippinger*, stay the case, and require Plaintiff to complete

16

appraisal before proceeding with this lawsuit. *Phillips,* 2020 U.S. Dist. LEXIS 104094, at *52-54; *Clippinger*, 2021 WL 4887984, at *14.

## CONCLUSION

For all of the foregoing reasons, State Farm respectfully requests that the Court dismiss Plaintiff's Complaint with prejudice or, in the alternative, compel appraisal and stay this action pending resolution of the appraisal process.

DATE: February 17, 2022

                    Respectfully submitted,

                    */s/ Daniel F. Diffley*
                    DANIEL F. DIFFLEY
                    Georgia Bar No.: 221703
                    MELISSA G. QUINTANA
                    Melissa G. Quintana
                    Georgia Bar No.: 891573
                    **ALSTON & BIRD LLP**
                    1201 W. Peachtree Street
                    Atlanta, Georgia 30309
                    Telephone: (404) 881-7000
                    dan.diffley@alston.com
                    melissa.quintana@alston.com

                    ***Attorneys for Defendant, State Farm Mutual Automobile Insurance Company***

**CERTIFICATE OF SERVICE**

I hereby certify that on February 17, 2022, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will automatically send email notification of such filing to the attorneys of record.


                                          *s/ Melissa G. Quintana*
                                        Melissa G. Quintana